UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11081-GAO

LISA STERN TAYLOR, DANIEL ABRAHAM, and DIANA SAWYER, as Trustees of the
Bradley C. Sawyer Trust, and LISA STERN TAYLOR, DANIEL ABRAHAM, and DIANA
SAWYER, as Trustees of the Diana A. Sawyer Trust,
Plaintiffs,

v.

NEIL W. SAWYER, individually, and NEIL W. SAWYER, as Trustee of the Neil W. Sawyer
Revocable Trust of 2022,
Defendants.

OPINION AND ORDER
March 31, 2022

O'TOOLE, D.J.

At issue in this case is the execution and enforceability of a contract regarding the
disposition of real estate owned by the Brad-Neil Realty Trust. The real estate in question is land
on which a ski area known as Ski Bradford operates. The plaintiffs, as trustees of two trusts that
are beneficiaries of the Brad-Neil Realty Trust, have brought suit against Neil W. Sawyer as an
individual and as a trustee of another trust that is the remaining beneficiary of the Brad-Neil Realty
Trust. The plaintiffs seek summary judgment to enforce a contract requiring the defendants to
purchase the beneficiary interests of the plaintiff trusts.

I.      **Facts**

The following facts are undisputed:

Bradley C. Sawyer and his brother Neil W. Sawyer together owned and operated a ski area
in Bradford, Massachusetts, known as Ski Bradford. The real estate upon which Ski Bradford
operates is owned by the Brad-Neil Realty Trust. The Bradley C. Sawyer Trust, the Diana A.

Sawyer Trust, and the Neil W. Sawyer Revocable Trust of 2002 are the beneficiaries of the Brad-Neil Realty Trust. The Bradley C. Sawyer Trust holds a 12.5% beneficial interest, the Diana A. Sawyer Trust holds a 37.5% beneficial interest, and the Neil W. Sawyer Revocable Trust of 2002 holds a 50% beneficial interest.

On December 6, 2012, the beneficiaries of the Brad-Neil Realty Trust along with Bradley C. Sawyer, individually, Diana A. Sawyer, individually, and Neil W. Sawyer, individually, entered into a Buy-Sell Agreement ("the RT Agreement") relating to their beneficial interests in the Brad-Neil Realty Trust. The RT Agreement provides that upon Brad's death, Neil's Trust and Neil, jointly and severally, shall have the obligation to purchase, all (but not less than all) of the beneficial interest held by Brad's Trust or Brad or held by Diana's Trust or Diana as of the date of Brad's death. The RT Agreement provides that the purchase price the defendants would be required to pay is the total percentage of the combined beneficial interest of the Bradley C. Sawyer Trust and the Diana A. Sawyer Trust, which would effectively be 50% of the valuation of the real estate without any discount as to minority interest, non-marketability, or otherwise. The valuation to be used for calculating the purchase price is the "fair market value, as mutually agreed" by the buyer and seller, or the "Appraised Value as determined by an independent third-party appraiser mutually selected" by the buyer and seller, if they could not agree as to the value. (Pls.' Statement of Material Facts, Ex. B at ¶ 4(a) (dkt. no. 25).)

On September 5, 2016, Brad died. Lisa Stern Taylor, Daniel Abraham, and Diana Sawyer are the current successor trustees of the Bradley C. Sawyer Trust and the Diana A. Sawyer Trust.

On or about March 8, 2017, a representative of LandVest, the appraiser the parties retained to value the real estate owned by the Brad-Neil Realty Trust, conducted an inspection of the realty trust property. LandVest appraised the fair market value of the real estate at its highest and best

use to be $1,695,000 as of the date of Brad's death. Neil's obligation for the acquired beneficial

interest in the realty trust under that valuation is $847,500.

On September 20, 2017, Neil informed the plaintiffs that he had independently requested

that LandVest conduct an amended appraisal considering the property only as a local-scale,

seasonal-use recreational ski area. The amended appraisal concluded that the market value of the

subject going concern was within the range of $900,000 to $1,000,000.

Although the plaintiffs have been ready, willing, and able to close on the sale of their

beneficial interest in the realty trust as called for in the RT Agreement, the defendants have not

thus far closed on the purchase.

## II.    Discussion

Many of the arguments raised by the parties in this action were addressed in the Opinion

and Order granting summary judgment in favor of the plaintiffs in a related case. See Stern Taylor

v. Sawyer, No. [37] Civ. Action No. 20-11080 (D. Mass. Mar. 31, 2022). For substantially the

same reasons set forth in the order granting summary judgment in favor of the plaintiffs there, I

agree with the plaintiffs in this action that they are also entitled to judgment as a matter of law with

respect to the claim of breach of the RT Agreement. I write separately here to address certain

arguments in brief.

As an initial matter, the defendants appear to try to raise a dispute of fact regarding the

proper valuation of the property by including information about the second appraisal which

analyzed the property's value as a local-scale, seasonal-use recreational ski area. But the

defendants cannot show why the difference between the two valuations is relevant. The RT

Agreement provides that the valuation is to be based on the fair market value of the real estate,

generally and plainly understood under applicable law to be the highest price which a third party

would pay in an assumed free and open market. See Epstein v. Bos. Hous. Auth., 58 N.E.2d 135 (Mass. 1944); accord Prop. Acquisition Grp., LLC v. Ivester, 122 N.E.3d 10, 18 (Mass. App. Ct. 2019) ("Because the determination of fair market value is based on what a reasonable buyer would believe the property to be worth, the highest and best use of the property is not limited to the present use . . . but includes potential uses of land that a reasonable buyer would consider significant in deciding how much to pay." (quoting Bos. Edison Co. v. Mass. Water Res. Auth., 947 N.E.2d 544, 552 (Mass. 2011))). The third-party appraiser, agreed upon by the parties, determined that the fair market value at its highest and best use was $1,695,000. The alternate appraisal based only on the property's continued use as a ski operation does not satisfy the proper valuation standard and consequently does not create a genuine dispute as to a material fact.

The defendants advance a defense of mutual mistake. The defense is untimely raised, and the defendants fail to demonstrate the existence of any facts which could lead a reasonable jury to find in their favor. When the RT Agreement was signed, the Sawyer Agreement relating to the shares in the Sawyer Corporation had already been executed. There is nothing in the RT Agreement that indicates it replaced the Sawyer Agreement or would be interpreted as forming one agreement with the Sawyer Agreement. The separate agreements involve different signatories, different subjects, and different valuation methods for the subject property.

The defendants also argue that the RT Agreement is unenforceable on the basis of frustration of purpose. In addition to being untimely raised, this defense fails because the defendants do not raise a triable fact as to it. As described in the order regarding Sawyer Enterprises, the defendants do not identify an occurrence of an event, the nonoccurrence of which was a basic assumption which the contract was made. As anticipated by the signatories, who

entered into the RT Agreement after the Sawyer Agreement and with the advice of counsel, Brad died. This was the triggering event explicitly envisioned in the RT Agreement.

The defendants also claim that it is not financially feasible to concurrently perform the purchasing obligations under the two agreements. To the extent that the defendants are claiming an impossibility defense—which would also be untimely—they do not point to any unanticipated circumstances that has made performance vitally different from what would and should have been reasonably expected. Brad's death was an anticipated circumstance that triggered obligations under each of the agreements. The RT Agreement, like the Sawyer Agreement, provides a method by which the seller may pay the purchase price over time and a mechanism for enforcement if a party failed to perform its obligations.

While the defendants may now wish that they had negotiated one agreement that provided for the real estate, operation, and equipment as a whole, the undisputed facts show that the various entities treated the components separately in separate agreements. No reasonable jury could find on this record that the defendants are excused from performing under the RT Agreement following Brad's death.

### III.   Conclusion

For the foregoing reasons, and those articulated in the Opinion and Order in the companion case, the plaintiffs' Motion for Summary Judgment (dkt. no. 12) is GRANTED as to Count I alleging breach of the RT Agreement.[1] Judgment shall enter in favor of the plaintiffs on that count.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[1] The plaintiffs state that they intend to voluntarily dismiss Count II.